(No. 23811.—■

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-.
ror, *vs.* ABRAHAM KARATZ, Plaintiff in Error.

*Opinion filed December 10, 1936—Rehearing denied Feb. 5, 1937.*

MYER H. GLADSTONE and EDWARD M. KEATING, (WM.
SCOTT STEWART, of counsel on rehearing,) for plaintiff in
error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY,
State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON,
JOHN T. GALLAGHER, RICHARD H. DEVINE, and MELVIN S.
REMBE, of counsel,) for the People.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

Dave Barry, Abraham Karatz, Otto Van Derck, Walter Ehlers, Gustaf Linquist, Hayden Sanders and Joseph Baiata, alias Charles Carloni, alias J. B. Farquhar, alias Joseph B. Marsino, alias Joseph Marcino, alias Joseph Omar, alias Joseph Omer, alias Harry Goldman, alias Frank Bianco, were indicted by the grand jury of Cook county charged with a conspiracy to defraud the Amalgamated Trust and Savings Bank of $55,000. Baiata pleaded guilty and was sentenced to the penitentiary. Sanders was granted a separate trial. On motion of the State's attorney Ehlers and Van Derck were granted separate trials. The record does not show the disposition of the case as to Linquist. Barry and Karatz were tried together before a jury in the criminal court and found guilty. Barry was sentenced to the county jail, Karatz to the penitentiary and also to pay a fine of $2000 and costs. They sued out a writ of error from the Appellate Court for the First District. The record was there reviewed. The judgment was affirmed as to Karatz (hereinafter called the defendant) but as to Barry was reversed and the cause remanded for a new trial. (*People* v. *Karatz*, 287 Ill. App. 12.) Karatz brings the record here on writ of error.

The evidence amply establishes the conspiracy charged. The issue is whether Karatz was a party to it. The record is quite voluminous. It would serve no useful purpose to set forth the evidence *in extenso*. The material facts tending to establish the defendant's guilt are stated in *People* v. *Karatz, supra.*

Van Derck was a clerk in the bank at a salary of $65 per month. The defendant urges that his conviction is based upon the uncorroborated testimony of Van Derck, an admitted accomplice, and unless the record is substantially free from error his conviction cannot be upheld. Such is the law. (*People* v. *Weitzman,* 362 Ill. 11; *People* v.

*Reznik,* 361 id. 145.) The defendant states that Van Derck was successfully impeached. We have carefully examined his testimony. There are some inconsistencies and contradictions therein, but they are not of material moment or on major issues and not sufficient for this court to·say that he was impeached. To the contrary, there is evidence strongly tending to corroborate his story connecting Karatz with the conspiracy. The judgment of conviction of a defendant procured on the testimony of an accomplice' will not be molested where the facts and circumstances testified to by such accomplice, when weighed and tested according to the established rules applicable thereto, are sufficient to prove guilt beyond a reasonable doubt. *People* v. *Kendall,* 357 Ill. 448.

The serious charge is made that the defendant's conviction was secured by the State's attorney's office through subornation of perjury and the suppression of material evidence. Our attention to this branch of the case is directed to the following:

An incident occurred during the cross-examination of Van Derck. He was asked by the attorney for the defendant Karatz what were the largest checks he "pulled" prior to September 6, 1934. The witness replied, "About three or four thousand dollars at the highest, I think." The next question was, in substance, whether there were any checks lower than three or four thousand subsequent to September 6. The assistant State's attorney objected, stating, "He did not say three thousand. He said three or four hundred." Defendant's attorney did not object to this statement but said, "I am referring to after September 6. I think he said it was larger amounts, isn't that right?" The trial judge then observed, "What you mean to ask, I take it, is what was the largest amount prior to September 6, is that right?" Defendant's attorney replied, "That is right." The witness then answered, "I would say about three or four hundred dollars." It is urged that the assistant State's

attorney by his statement put this answer in the witness' mouth.

The testimony shows that some three weeks before his indictment Van Derck made a written statement to the State's attorney's office. By this writing he detailed certain phases of the offense and his connection therewith. About a month after his indictment, and being about a week before the trial of the present case, an assistant State's attorney told Van Derck that Baiata had pleaded guilty, gave Van Derck a copy of his statement, telling him to go over it, see if there was anything he desired to add, and to fix the dates definitely, if he could. Van Derck was asked this question on his cross-examination, "Well, now as to the defendant Barry, you penciled his name in, did you not, at these various conversations, after receiving the typewritten copy of the statement from the State's attorney's office?" The witness answered, "They said that seeing Mr. Baiata had pleaded guilty, I would have to line up all my conversations with Mr. Barry and Mr. Karatz, because a lot of those with Mr. Baiata would not be admissible, so I wrote them down on separate pieces of paper." He then proceeded to state, in substance, that he wrote in Barry's name to indicate those occasions when he had a conversation with Baiata in Barry's presence.

It is charged that because the State's attorney did not call certain supposed witnesses, thereby he was guilty of suppressing evidence. That conclusion does not follow.

The defendant states the trial court erred in sustaining objection to the following question: "Did they suggest to you [referring to the State's attorney's office,] that if you testified for the State that you would receive some consideration, or that if you testified the right way, the way they showed you how to testify?" The trial court did not commit prejudicial error in sustaining the objection to the question. Van Derck in the course of his testimony stated, in substance, that the assistant State's attorneys in charge of

the case had told him that they could promise him nothing but would tell the judge that he came in, told them the whole truth about the case and helped them to get the facts in the case; that the question of leniency was the prerogative of the judge. He stated he hoped for leniency and would like to get probation. The record does not justify the charge that the defendant's conviction was brought about by subornation of perjury or the suppression of proper and material evidence by the State's attorney's office. The defendant was not deprived of due process of law. His case does not come within the rule announced relative to the deprivation of due process of law by means of perjured testimony, as announced in *Mooney* v. *Holohan,* 294 U. S. 103, 79 L. ed. 791, cited by the defendant.

The next point made is that the trial court admitted evidence of another crime, to the prejudice of the defendant. Miss Ann White, a book-keeper for the Bank of Montreal, testified that Baiata and Karatz were in that bank together; that Baiata came to cash a check for $25,000 drawn on an out-of-town bank. She was asked on her re-direct examination if the check was one of the Abraham Lincoln Life Insurance Company, (hereinafter called the insurance company,) and she answered that it was. No objection was made at the time the question was asked and the answer given. At the close of the case in chief for the People the defendant made a motion to strike the testimony of Miss White with reference to the $25,000 check and to direct the jury to disregard that evidence. No reasons were then assigned in support of the motion. No hint was given to the trial judge that such evidence tended to prove another crime unrelated to the offense for which the defendant was on trial. If it was the defendant's claim that such evidence was incompetent, as tending to prove another criminal offense, to his injury, the objection should have been made at the time and cannot now be urged here. *People* v. *McCurrie,* 337 Ill. 290.

On his cross-examination, Karatz, in reply to questions asked him, stated he never was in the Bank of Montreal in his life; that he never went there with Baiata with a check or draft for $25,000 from the insurance company. He was then asked if he had seen the check. He said he had—that he brought it from Springfield. Up to this juncture no objection had been made to that evidence. The defendant's attorney at this point objected to this line of questioning, stating, "It smacks of the subject matter of the other indictment." The objection was sustained.

Karatz was interrogated as to whether he went to Indianapolis with Sanders and Ehlers to buy a bank. He said he did not but went to see a man with offices in the Central Power building. He was then asked if he, Sanders or Baiata had any of the assets of the insurance company with them on this occasion. The objection to this question made by the defendant's counsel was sustained. The evidence given was relevant, as tending to show an association and a concert of action between the defendant and Baiata, and also as tending to sustain Van Derck's testimony as to the devices adopted to defraud the bank. The court committed no reversible error in his rulings on this branch of the case.

It is insisted that the conduct of the State's attorney and remarks and statements made by him during the course of the trial and in his arguments to the jury deprived the defendant of a fair and impartial trial. No objection was made to the matters now complained of during the course of the trial. The general rule is, that any alleged misconduct of a State's attorney must be objected to at the time in order to be properly presented for review here. (*People* v. *Payne,* 359 Ill. 246; *People* v. *Stathas,* 356 id. 313.) The defendant urges that there are exceptions to this general rule, and cites *People* v. *Gardiner,* 303 Ill. 204, to the effect that this court will consider errors of that class notwithstanding they are not sufficiently preserved for review.

In the case cited the evidence was close and the State's attorney there had taken improper advantage of the inexperience of counsel for the accused. For that reason the court considered the errors assigned although there was a failure to preserve correctly the questions for review. In the case at bar there was no over-matching of attorneys. The defendant was represented by competent counsel. *People* v. *Gleitsmann*, 361 Ill. 165, also cited, has no application here.

Upon a review of the entire record we cannot say that the defendant did not have a fair and impartial trial. The verdict of the jury will not be disturbed.

The judgment is affirmed. *Judgment affirmed.*